**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Camelot SI, LLC<br><br>            Plaintiff,<br><br>      v.<br><br>ThreeSixty Brands Group LLC f/k/a<br>360 Holdings II-A LLC and MerchSource,<br>LLC,<br><br>            Defendants. | Case No. 1:21-cv-8232<br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED AND SUPPLEMENTED COMPLAINT

Plaintiff Camelot SI, LLC ("**Plaintiff**" or "**Camelot SI**"), by and through its attorneys, hereby complains of Defendants ThreeSixty Brands Group LLC f/k/a 360 Holdings II-A LLC ("ThreeSixty") and MerchSource, LLC ("Merchsource" and collectively with ThreeSixty, "**Defendants**") as follows:

### INTRODUCTION

Camelot SI brings this Complaint against Defendants for tortious interference with prospective economic advantage, tortious interference with contract, and breach of contract all arising from Defendants' use of the mark SHARPER IMAGE in e-commerce, which confuses consumers and violates the Camelot SI and ThreeSixty's agreement. For more than a decade, Camelot SI has operated as a licensee of the SHARPER IMAGE mark, with an exclusive license in e-commerce, and worked to resurrect the Sharper Image brand. During the course of the parties' relationship, licensee Camelot SI has worked cooperatively with licensor ThreeSixty. Camelot SI has discovered, however, that Defendants are using the SHARPER IMAGE mark to sell competing

products in e-commerce. In bad faith, Defendants are taking advantage of the trust Camelot SI has built with consumers and depriving Camelot SI the benefit of its bargain. ThreeSixty has further violated Camelot SI's rights by improperly attempting to terminate one of the parties' contracts. Camelot SI therefore asks this Court for injunctive relief, damages, costs, and fees.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Camelot SI, LLC is a limited liability company organized under the laws of Michigan, with a principal business address of 27725 Stansbury Boulevard, Suite 175, Farmington Hills, Michigan 48334. Through its members, Camelot SI is a citizen of Florida, Arizona, Ohio, Michigan, Connecticut, South Dakota and Indiana. *See, e.g., Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (the citizenship of a limited liability company is determined by the citizenship of each of its members). More specifically, Camelot SI's members have the following citizenship:

| Member | Individual Member Residence, As Applicable | Trustee[1] Name and Location, As Applicable | Member Citizenship |
|---|---|---|---|
| David Katzman Revocable Living Trust | Not applicable | David B. Katzman, Florida | Florida |
| David and Nancy Katzman Children's Trust | Not applicable | PandoTree Trust Company LLC, Arizona and Ohio[2] | Arizona and Ohio |

---

[1] The citizenship of a family trust is derived from the citizenship of its trustee. *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 722 (2d Cir. 2017). All of the trusts identified in the membership and citizenship analysis for Camelot SI are family trusts.

[2] PandoTree Trust Company LLC's sole member is Pando Holdings, LLC. Pando Holdings, LLC's members are TFO Phoenix, Inc. (a company incorporated in, and with its principal place of business in, Arizona) and TFO-TDC, LLC. TFO-TDC, LLC has two members: an LLC and an irrevocable trust. The trustee of the irrevocable trust is an individual citizen of Ohio. The LLC's sole member is an irrevocable trust. The trustee of the irrevocable trust

4880-4445-9065.4

| Member | Individual Member Residence, As Applicable | Trustee[1] Name and Location, As Applicable | Member Citizenship |
|---|---|---|---|
| David Katzman 2009 Family Trust | Not applicable | PandoTree Trust Company LLC, Arizona and Florida (*see* fn. 3) | Arizona and Ohio |
| Pyett Family Trust | Not applicable | Nicholas and Karen Pyett, Residents of Michigan | Michigan |
| DBK Investments, LLC[3] | Not applicable | Not applicable | Connecticut and South Dakota |
| Steve Cicurel | Michigan | Not applicable | Michigan |
| Jim McDonald | Indiana | Not applicable | Indiana |
| Jorey Chernett | Michigan | Not applicable | Michigan |
| Jonathan Lance Reese | Florida | Not applicable | Florida |

2.      Upon information and belief, Defendant ThreeSixty Brands Group LLC f/k/a 360

Holdings II-A LLC is a limited liability company organized under the laws of Delaware, with a

---

is PandoTree Trust Company LLC. Because the third party trusts and individuals are unrelated to this litigation, the names of these individuals are omitted here but can be provided under separate cover if desired by the Court.

[3] DBK Investments, LLC's sole member is David B. Katzman 2018 Irrevocable Trust.  The trustee of David B. Katzman 2018 Irrevocable Trust is South Dakota Trust Company LLC.  The sole member of South Dakota Trust Company LLC is an LLC with two members: an individual citizen of Connecticut and an individual citizen of South Dakota. Because the third party trusts and individuals are unrelated to this litigation, the names of these individuals are omitted here but can be provided under separate cover if desired by the Court.

registered agent address of 1209 Orange Street, Wilmington, Delaware 19801. The sole member of Defendant ThreeSixty is 360 Holdings III Corp., a corporation organized under the laws of the State of Delaware with its principal place of business in California. Therefore, ThreeSixty is a citizen of Delaware and California.

3.      Upon information and belief, Defendant MerchSource, LLC is a limited liability company organized under the laws of Delaware, with a principal business address of 15 Cushing, Irvine, California 92618. The sole member of Defendant MerchSource is 360 Holdings III Corp., a corporation organized under the laws of the State of Delaware with its principal place of business in California. Therefore, MerchSource is a citizen of Delaware and California. MerchSource is a licensee of Defendant ThreeSixty Brands Group LLC.

4.      There is complete diversity of citizenship between Plaintiff, a citizen of Florida, Arizona, Ohio, Michigan, Connecticut, South Dakota and Indiana, and Defendants, citizens of Delaware and California.

5.      The jurisdictional amount is also satisfied because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. As a consequence of Defendants' conduct alleged herein, Camelot SI is entitled to recover damages in an amount no less than $75,000.

6.      Because this is a civil action where there is complete diversity of citizenship and the amount in controversy is met, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(1).

7.      Personal jurisdiction in this district is proper because, upon information and belief, Defendants do business in New York. In the parties' contract, ThreeSixty Brands Group LLC f/k/a 360 Holdings II-A LLC also agreed to irrevocably submit to the jurisdiction of the State and

4

Federal courts located within the State of New York, County of New York (Manhattan), and waive any claim or defense of lack of personal jurisdiction in such forum. (Exhibit B, Purchase Agt., ¶ 18(b)).

8.      Venue is proper in this district under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this district, and Defendants are subject to personal jurisdiction in this district with respect to this action. In the parties' contract, ThreeSixty Brands Group LLC f/k/a 360 Holdings II-A LLC also agreed that any proceeding between the parties related to the parties' contract shall be brought exclusively in the courts located within the State of New York, County of New York (Manhattan), without regard to choice of law or venue provisions. (Exhibit B, Purchase Agt., ¶ 18(b)).

## CAMELOT SI'S LICENSE OF THE SHARPER IMAGE MARK

9.      Camelot SI has been operating as a licensee of THE SHARPER IMAGE and SHARPER IMAGE trademarks and logos ("Trademarks") for the past 12 years.

10.     Camelot SI purchased valuable rights to license the Trademarks, with exclusivity for e-commerce services, under a 2009 license and distribution agreement and subsequent purchase agreement and manufacturing agreement (collectively, the "Agreements").

11.     On August 14, 2013, Camelot SI and then-licensor Icon NY Holdings, LLC ("Icon") entered into the Manufacturing Addendum ("Manufacturing License Agreement"), which granted Camelot SI a non-exclusive license to manufacture and source manufacturing of SHARPER IMAGE branded products.

12. The Manufacturing License Agreement provides in pertinent part:

> Subject to the terms and conditions of this Agreement, Licensor hereby grants to Licensee a non-exclusive license solely throughout the Territory to use the Licensed Mark in connection with the manufacture, advertising, promotion, marketing,

distribution and sale solely of (i) Products approved by Licensor for use by Licensee at retail (the "Retail Products") solely via the website "sharperimage.com", the Sharper Image catalogue and Licensee-owned retail outlets (collectively, the "Approved Retail Channels") and (ii) with Licensor's express written consent on a case-by-case basis, Products approved by Licensor for use by Licensee at wholesale (the "Wholesale Products") solely to such accounts as Licensor approves in writing (the "Approved Wholesale Channels" and, together with the Approved Retails Channels, the "Approved Accounts") pursuant to this Agreement; provided, however, that Licensee may only manufacture, advertise, promote, market, distribute and sell any given Product if Licensor determines, in its sole discretion, that the quality of such Product is at least equivalent to the quality of the same or similar Product as it is being produced by Licensor's other licensee(s) for such Product.

(Manufacturing License Agt., ¶ 1.1(a).) A copy of the Manufacturing License Agreement is attached hereto as **Exhibit A**.

13.     On June 30, 2014, Camelot SI and Icon entered into the Website and Catalog Rights Purchase Agreement ("Purchase Agreement"), which replaced the 2009 license and distribution agreement. A copy of the Purchase Agreement is attached hereto as **Exhibit B**.

14.     The Purchase Agreement rendered the Manufacturing License Agreement "a separate, stand-alone agreement" confirming "the separation of the terms and conditions governing manufacture and sale of goods and products branded with the Trademarks (which shall hereafter be governed solely by the amended [Manufacturing License Agreement]) from the terms and conditions governing the branding of E-Commerce Services and Catalog Services (which shall hereafter be governed by this [Purchase Agreement]). (Exhibit B, Purchase Agt., ¶ 17.)

15.     The Purchase Agreement granted Camelot SI an exclusive license to use the Trademarks in e-commerce. (*Id*. at ¶ 3(a)(i).)

16.     The Purchase Agreement provides in pertinent part:

Subject to the terms and conditions set forth herein, Seller hereby grants to Buyer, and Buyer hereby accepts from Seller, the

6

exclusive, personal non-transferable, non-assignable (except in accordance with Section 14(b)(vi)), non-sublicensable right and license to use the Trademarks during the Term, solely in connection with the E-Commerce Services only in the E-Commerce Territory and the Catalog Services only in the Catalog Territory, and for no other products or services. The foregoing license shall allow the Buyer to reformat the Website as an online "app" and to use Social Media in the E-Commerce Territory, subject however, to any existing Contract involving the SHARPER IMAGE brand, the rights of licensees in the Excluded Jurisdictions, the rights of Seller's other licensees (both current and future) offering SHARPER IMAGE branded products through non-SHARPER IMAGE branded online retail sales or marketing platforms similar to the E-Commerce Services and the other terms set forth herein. In this regard, the license granted by this Section 3(a)(i) is nonexclusive for "apps" and Social Media to the extent indicated in the previous sentence. Additionally, on a non-exclusive basis, and in accordance with the Manufacturing Addendum, Buyer may continue to offer SHARPER IMAGE branded products in the E-Commerce Territory at retail directly to consumers through third party online retail sales platforms (e.g., Amazon and e-Bay); provided that it is acknowledged and agreed by Buyer that Seller's other licensees (both current and future) offering SHARPER IMAGE branded products through non-SHAPER IMAGE branded online retail sales or marketing platforms may continue to do so notwithstanding the rights granted herein to Buyer.

(*Id*. at ¶ 3(a)(i).)

17.     The Purchase Agreement further provides that "E-Commerce Services" are:

Retail services in the form of online retail services offered via the Website [SharperImage.com], Social Media, other digital retail sales platforms similar to the Website and derivations thereof that are later developed for the purposes of offering retail sales direct to consumers, in each of the foregoing cases, branded under the SHARPER IMAGE brand and the Trademarks ["THE SHARPER IMAGE" and "SHARPER IMAGE" trademarks and such logos and adaptations of such trademarks as Seller may approve in writing.].

(*Id*. at ¶ 1(b)(xii).)

18.     The Purchase Agreement further provides:

In mutual recognition that the Trademarks are associated with Seller on a worldwide basis, each Party shall, throughout the Term, use

7

> commercially reasonable efforts to protect the good name and goodwill associated with the Trademarks and the SHARPER IMAGE brand. Both Parties agree to support the SHARPER IMAGE brand by refraining from, and using commercially reasonable efforts to cause their Affiliates or licensees to refrain from, conduct that is illegal, offensive or would tend to subject the other Party or the SHARPER IMAGE brand to ridicule, contempt, controversy, embarrassment or scandal. Neither Party may use, nor shall it permit its Affiliates or licensees to use, the Trademarks in any way that could (i) negatively reflect upon, dilute or otherwise tarnish the SHARPER IMAGE brand or the Trademarks, or (ii) compromise or reflect unfavorably upon the good name, goodwill, reputation or image of the other Party. For the avoidance of doubt, these obligations specifically include any content or messaging distributed through Social Media.

(*Id*. at ¶ 4(c).)

19.     The Purchase Agreement also provides:

> At any time and from time to time after the Effective Date, Seller shall, for no further consideration and at Buyer's sole cost and expense, execute and deliver all such other further documents and perform all further acts that may be reasonably requested by Buyer to effectuate the terms and provisions of this Agreement.

(*Id*. at ¶ 6.)

20.     Accordingly, for more than a decade, Camelot SI has been the only party authorized to sell SHARPER IMAGE branded products through SHARPER IMAGE branded online retail sales or marketing platforms.

21.     Camelot SI has operated the SHARPER IMAGE branded website at domain name <SharperImage.com> since 2009, and has owned the website since 2014.

22.     On September 29, 2010, Camelot SI entered into the Merchants@Amazon.com Program Agreement ("Amazon Merchant Agreement") with Amazon.com ("Amazon"). A copy of the Amazon Merchant Agreement is attached hereto as **Exhibit C**.

23.     The Amazon Merchant Agreement allows Camelot SI to sell products on Amazon's

e-commerce platform. (Exhibit C, Amazon Merchant Agt., ¶ 2.1.)

24.     The Amazon Merchant Agreement provides:

> **Product Listing and Merchandising.** Subject to the terms of this
> Agreement (including Seller's right to determine Purchase Prices),
> commencing on the Launch Date Amazon will list Seller Products
> for sale on the Amazon.com Site and conduct merchandising and
> promotion of Seller Products as determined by Amazon (including
> via the Amazon Associated Properties or any other functions,
> features, advertising, or programs on or in connection with the
> Amazon.com Site). Seller acknowledges and agrees that Amazon
> may implement mechanisms that rate and/or allow Persons to rate
> and provide feedback regarding Seller Products, Seller and/or
> Seller's performance and Seller consents to Amazon making such
> ratings and other feedback publicly available.

(*Id.* at ¶ 1.2).

25.     Amazon has been listing Camelot SI products since 2012.

26.     Camelot SI's exclusive license of the Trademarks in connection with e-commerce

services also explicitly includes social media. (Exhibit B, Purchase Agt., ¶¶ 1(b)(xii), 3(a)(i).)

Camelot SI owns, operates, and exclusively manages the SHARPER IMAGE branded social media

accounts to promote and market the Sharper Image brand. In the past four years, the Sharper Image

brand has appeared in advertisements on individual social media pages more than 300 million

times due to Camelot SI's marketing spend and efforts.

27.     There were not always hundreds of millions of consumers viewing Sharper Image

advertisements. When Camelot SI purchased its exclusive license for e-commerce, the Sharper

Image brand was bankrupt. Many former Sharper Image customers were angry. They had invalid

gift cards or products that could not be exchanged or returned.

28.     Camelot SI built its business—and the Sharper Image brand—from ground zero. It

answered thousands of angry calls from customers of the former and bankrupt Sharper Image as

an investment to rebuild the brand. It provided excellent customer service and invested significant capital and resources to overcome the challenges posed by the bankruptcy. It took years for Camelot SI to create goodwill with the Sharper Image brand.

29.     In the past 12 years, Camelot SI has spent $168 million to market and promote the Sharper Image brand. It has delivered 1.4 billion emails to the inboxes of SharperImage.com email subscribers. And it has mailed more than 210 million catalogs to consumers' homes.

30.     In the 2021 holiday season alone, Camelot SI budgeted $27 million for marketing and promoting the brand. It also made plans to mail 36 million catalogs.

31.     During the peak season each year, Camelot SI staffs its call center with more than 100 agents to take calls from SharperImage.com customers.

32.     The ability to source manufacturing and sell the manufactured products also is integral to Camelot SI's business. Camelot SI has expended substantial effort to establish relationships with manufacturers from whom Camelot SI sources SHARPER IMAGE products.

33.     Camelot SI has made this significant investment of capital, resources, effort, and goodwill in reliance on its rights under the Agreements.

34.     Notably, during the COVID-19 Pandemic, Camelot SI saw a surge in its sales and online activity because of Camelot SI devoting substantial resources into the SHARPER IMAGE brand.

35.     Through its investment, Camelot SI revived the moribund Sharper Image brand and cemented consumer confidence in the brand.

36.     From 2009 to 2016, Camelot SI worked closely with the then-licensors of the Trademarks in performing under the Agreements.

37.     Upon information and belief, 360 Holdings II-A LLC acquired the Agreements and related assets in December 2016.

38.     Upon information and belief, 360 Holdings II-A LLC changed its name to ThreeSixty Brands Group LLC in February 2017.

39.     Since December 2016, Camelot SI continued to consistently perform under the Agreements, invest in its business operations, and work cooperatively with ThreeSixty.

**ALTER EGO ALLEGATIONS**

40.     The sole member of both Defendants ThreeSixty and MerchSource is 360 Holdings III Corporation.

41.     Defendants' own employees are often unable to delineate the difference between MerchSource and ThreeSixty. Indeed, Defendants' representatives hold themselves out as both affiliated with MerchSource and ThreeSixty. As a result, there is often confusion among ThreeSixty and MerchSource representatives as to what entity certain individuals work for. Moreover, there is overlap in management at MerchSource and ThreeSixty. For example, MerchSource and ThreeSixty share the same Chief Executive Officer.

42.     On information and belief, MerchSource exerts complete dominion and control over ThreeSixty and therefore operates ThreeSixty as its instrumentality and alter ego.

43.     Upon information and belief, ThreeSixty has no practical existence separate from that of MerchSource. For example, the personnel handling the acquisition of the Trademarks on behalf of ThreeSixty operated out of MerchSource offices, used MerchSource email addresses, and held positions at MerchSource. On information and belief, the lead negotiator for the transaction on behalf of ThreeSixty was employed by MerchSource. Moreover, ThreeSixty's announcement regarding its acquisition of the Trademarks stated that ThreeSixty was "originally

known as MerchSource" and that "[t]hrough MerchSource, it's U.S. retail-facing division, ThreeSixty has licensed the Sharper Image brand from Iconix..."

44.     Upon information and belief, the ThreeSixty personnel with whom Camelot SI interacted with respect to SHARPER IMAGE branded products all actively participated in MerchSource's business of selling competitive SHARPER IMAGE branded products. Thus, after the 2016 acquisition, Camelot SI's "Licensor" was, for all practical purposes, not a wholly independent company like its previous licensor, Icon, but a rival seller of products bearing the Trademarks.

45.     ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████

46.     Camelot SI's claims asserted in this case relate to conduct committed collectively by Defendants. For example, while Defendant ThreeSixty owns the "Sharper Tomorrow" trademark, MerchSource purchased the sharpertomorrow.com website domain.

**DEFENDANTS' IMPROPER CONDUCT**

47.     Over time, it became apparent that ThreeSixty and MerchSource had no desire to continue a licensing relationship with Camelot SI and wanted exploit the Trademarks in the e-commerce space, despite Camelot SI's exclusive license to use the Trademarks in that space. Accordingly, they embarked on a course of conduct that would simultaneously: (i) deprive Camelot SI of the valuable business it had built under the SHARPER IMAGE brand; and (ii) effectively transfer that business—and the innovations that Camelot SI brought to that business—to MerchSource.

48.     Despite ThreeSixty's agreement to offer SHARPER IMAGE branded products only through **non-SHARPER IMAGE branded** e-commerce services and in direct violation of Camelot SI's exclusive license of the Trademarks in connection with e-commerce services, Camelot SI has discovered that Defendants ThreeSixty and MerchSource are operating several SHARPER IMAGE branded online retail sales and marketing platforms, and has launched a second brand known as "Sharper Tomorrow"—a confusingly similar variant of the famous SHARPER IMAGE mark.

49.     First, MerchSource, on its own and with the assistance of ThreeSixty, has established a SHARPER IMAGE branded storefront on Amazon selling SHARPER IMAGE branded products.



50.     The storefront is set up as a microsite, or "site within a site" and purports to be the official home of all things SHARPER IMAGE on the world's largest marketplace, Amazon.com.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

51.     Defendants maintain control of the Amazon storefront and have not shared any information or privileges related to the store with its licensee, Camelot SI. From the storefront, consumers are urged to "Share this page with [their] friends" and to "Follow" the "Sharper Image," meaning Defendants. The storefront spotlights a number of Defendants' products in a variety of categories. At the bottom of the page, a confusing mashup of Defendants and Camelot SI products are featured under the headline "Recommended for You"—the two products on the left originate with Camelot SI, while the two products on the right originate with Defendants:

**Recommended for You**

   

52.     Defendants' controlled "Sharper Image Store" is available via hyperlink from each and every one of Defendants' SHARPER IMAGE branded product pages, as seen in the example below:

14



53.     In fact, Defendants' controlled "Sharper Image Store" is even hyperlinked from Camelot SI's own product pages. In the example below, a Camelot SI product page for the Sharper Image Cordless Auto Stop Tire Inflator contains a link titled "Visit the Sharper Image Store," which is Defendants' Amazon storefront.

15



### Sharper Image Cordless Auto Stop Tire Inflator

Visit the Sharper Image Store
★★★★½ ˅   85 ratings
| 13 answered questions

Price: **$99.00**

Get $10 bonus when you reload $100 or more to your gift card balance.

- The Cordless Auto Stop Tire Inflator is the handy all-purpose compressor for maintaining proper air pressure in car tires, bicycle tires, pool toys and sports equipment. It automatically stops inflating when it reaches your specified air pressure.

› See more product details

🗩 Report incorrect product information.



Click image to open expanded view

54.     As should be obvious, this hyperlinking means that consumers interested in Camelot SI's licensed SHARPER IMAGE goods are being directed to a competing microsite (Amazon storefront) from which they are urged to buy SHARPER IMAGE branded goods from ThreeSixty or its subsidiary and Camelot SI's competing licensee, Merchsource.

55.     In addition to improperly setting up an Amazon microsite, MerchSource has registered a confusingly similar variant of the SHARPER IMAGE trademark, "Sharper Tomorrow" as a domain name, <SharperTomorrow.com>.

56.     Defendant MerchSource purchased the domain for SharperTomorrow.com on June 25, 2020.

16

57.     While MerchSource primarily operated the "SharperTomorrow.com Site",[4] ThreeSixty actively participates in strategy for the website, including strategy for marketing SHARPER IMAGE branded products through the website. The SharperTomorrow.com Site was a SHARPER IMAGE branded website that Defendants own, operate, and used to promote and sell MerchSource's SHARPER IMAGE branded goods, and it is confusingly similar to the SharperImage.com site owned and operated by Camelot SI.

58.     The SharperTomorrow.com Site purported to be "the" voice of "Sharper Image" online, under the confusingly similar trademark SHARPER TOMORROW. On the site, Defendants' claimed the heritage of the SHARPER IMAGE brand, and positions itself as the "evolution" of the brand:



SHARPER TOMORROW

From the beginning in 1977, Sharper Image embraced the cutting edge and brought the best of tomorrow to people today. That vision hasn't changed, but it has evolved. Today, Sharper Image goes beyond simple innovation. To be clever. Visionary. Timeless. Sharper Image products continue to create thoughtful and exciting ways to change your life – delivering experiences you will remember today, tomorrow and Tomorrow's Tomorrow™.

59.     Defendants also used the SharperTomorrow.com Site to direct consumers to their own retail partners and away from Camelot SI's licensed site and SHARPER IMAGE branded

---

[4] The SharperTomorrow.com website operated from June 2020 to mid-2022. Since filing Camelot SI's first amended complaint, Defendants have caused the Sharpertomorrow.com website URL to redirect to another MerchSource website, www.powerboost.com.

goods. Indeed, the SharperTomorrow.com Site included a link directly to Defendants' SHARPER
IMAGE branded storefront and microsite on Amazon.com.

60.     Presumably, if a purchaser of one of Camelot SI's products accidentally navigates
to the SharperTomorrow.com Site, Defendants will be happy to collect their personal information
and then market to them directly, thus interfering with Camelot SI's relationship with an existing
customer.

61.     In addition to setting up an improper Amazon storefront and establishing a
confusingly similar brand to poach customers from its legitimate licensee, Defendants have also
registered rival SHARPER IMAGE branded social media accounts on Facebook, Twitter,
Instagram, and other platforms under the username "asharpertomorrow."

62.     These social media accounts purport to be from "Sharper Image," claim the heritage
of the SHARPER IMAGE brand licensed to Camelot SI, and directed consumers to the
SharperTomorrow.com Site from June 2020-mid 2022 (but now redirects to a different
MerchSource website, powerboost.com), as illustrated by the Instagram account information
shown below:



4880-4445-9065.4

63.    On Twitter, Defendants hashtag each and every one of its tweets with the same two hashtags: #SharperImage and #asharpertomorrow, thus increasing the blurring of the lines between the original Sharper Image brand and the Defendants' offshoot, Sharper Tomorrow:



64.    Over on Facebook, Defendants again use the two hashtags in a confusing manner, one after the other, while branding its posts as SHARPER IMAGE®:

4880-4445-9065.4



65.     Defendants' actions as highlighted above have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source, origin, or approval of Defendants' and Camelot SI's respective goods and services. In fact, during the holiday season, Camelot SI receives hundreds of phone calls regarding Defendants' SHARPER IMAGE branded products. Moreover, Camelot SI has received numerous messages from consumers regarding issues with Defendants' SHARPER IMAGE branded products purchased through vendors other than Camelot SI.

66.     Consumers encountering the Sharper Tomorrow social media accounts will not be able to discern where one brand ends and the other begins. They may come to think of "Sharper Tomorrow" as representing a "refresh" of the classic Sharper Image brand, an idea that is reinforced by Defendants' use of language on the social media accounts indicating that "Sharper Tomorrow" is the "future" of the brand or represents an evolution of the classic brand.

67.     Defendants' actions as highlighted above also have and are likely to dilute and devalue the licensed SHARPER IMAGE marks, including because ThreeSixty and MerchSource have introduced a confusingly similar variant or counterfeit mark, SHARPER TOMORROW into the marketplace and is positioning that name and mark as "the future" of the Sharper Image brand.

68.     Moreover, upon information and belief, ThreeSixty is permitting other licensees to use the SHARPER IMAGE mark in e-commerce by including the Trademark in URLs and maintaining SHARPER IMAGE branded e-commerce websites. Indeed, Defendant MerchSource actively encourages other licensees to use the SHARPER IMAGE mark in e-commerce.

69.     Defendants' conduct effectively strips Camelot SI of the benefit of the exclusive license for e-commerce services and related rights that Camelot SI bargained for in the Purchase Agreement.

## CAMELOT SI'S CORRESPONDENCE WITH THREESIXTY

70.     Despite ThreeSixty's and its alter ego and licensee MerchSource's improper conduct, on June 21, 2021, ThreeSixty sent a letter to Camelot SI raising questions about, among other things, Camelot SI's use of the Trademarks in e-commerce services, including on Amazon and other third party websites.

71.     While investigating the contents of ThreeSixty's letter, Camelot SI discovered that it is ThreeSixty and MerchSource that is unfairly competing and wrongly engaging in conduct that is diluting and devaluing the SHARPER IMAGE marks, causing consumer confusion, harming its business partner and licensee (Camelot SI), and violating the Purchase Agreement.

72.     When encountering Defendants' unauthorized storefronts, social media accounts, rival website, and confusingly similar SHARPER TOMORROW mark, consumers will be unable

to discern which party is the legitimate source of SHARPER IMAGE branded goods. They also will be confused as to the relationship between the parties.

73.     Consumers visiting Defendants' SHARPER IMAGE branded Amazon.com storefront may assume that the storefront is operated by the same company behind the long-established SharperImage.com site run by Camelot SI. Worse, these consumers may determine there is no need to ever visit SharperImage.com again when they can purchase the "same" products from what appears to be the same source on Amazon.com, but with free "Prime" shipping options.

74.     Upon learning of ThreeSixty's breaches of the parties' agreement and Defendants' scheme to confuse consumers and encroach on Camelot SI's exclusive license, on July 21, 2021, Camelot SI sent ThreeSixty a notice of default, listing ThreeSixty's breaches of various provisions of the Agreements and demanding that ThreeSixty cure its ongoing breaches within thirty days of the notice. A copy of Camelot SI's notice of default is attached hereto as **Exhibit D**.

75.     Camelot SI's notice of default specifically requested, among other things, that ThreeSixty cancel its SharperTomorrow.com website and stop operating its Amazon storefront in violation of the Purchase Agreement. (Exhibit D, Camelot SI's Notice of Default at 7.)

76.     On September 15, 2021, ThreeSixty responded to Camelot SI's notice of default and refused to cure its breaches, dismissing Camelot SI's legitimate concerns. Instead, ThreeSixty sent its own notice of claimed breaches by Camelot SI, and demanded that Camelot SI cure those breaches or ThreeSixty would terminate the Agreements between the parties. A copy of ThreeSixty's September 15, 2021 response letter is attached hereto as **Exhibit E** ("September 15 Response").

77.     The Manufacturing License Agreement provides in pertinent part:

> If Licensee otherwise fails to perform any of the terms, conditions, agreements or covenants in this Agreement on its part to

22

be performed or takes any action, or fails to take any action, which action or omission is materially harmful to Licensor, and if (i) such default or harm is not curable, or (ii) such default or harm is curable but continues uncured for a period of twenty (20) days after notice thereof has been given to Licensee by Licensor, then Licensor, at its sole election, may terminate this Agreement forthwith by notice to Licensee.

(Exhibit A, Manufacturing License Agt., ¶ 16.1(b).)

78.     While Camelot SI worked to address the issues raised in ThreeSixty's September 15 Response, ThreeSixty escalated its assault on Camelot SI's rights.

79.     On October 4, 2021, MerchSource, through its agent BrandElite, Inc., reported to Amazon that Camelot SI is "listing counterfeit products." MerchSource's false report caused Amazon to remove products that Camelot SI had listed for sale and place Camelot SI's Amazon seller account "under review." Nine days passed before MerchSource retracted its improper counterfeit report regarding Camelot SI.

80.     Despite ThreeSixty's contractually improper and Defendants' tortious conduct, Camelot SI continued to cooperate with ThreeSixty to perform under the Agreements.

81.     On October 5, 2021, Camelot SI wrote to ThreeSixty, detailing the actions Camelot SI was taking to address the issues raised in ThreeSixty's September 15 Response. With these actions, Camelot SI cured every one of the breaches that ThreeSixty alleged. A copy of Camelot SI's October 5, 2021 letter is attached hereto as **Exhibit F**.

82.     On November 29, 2021, however, ThreeSixty sent a letter to Camelot SI, purporting to terminate the Manufacturing License Agreement. A copy of ThreeSixty's termination letter is attached hereto as **Exhibit G** ("Termination Letter").

83.     The Termination Letter did not allege any additional breaches of the Manufacturing License Agreement, nor did it specify the basis for the purported termination of the agreement.

84.     On December 10, 2021, Camelot SI responded to ThreeSixty's Termination Letter, notifying ThreeSixty that it did not have the right to terminate the Manufacturing License Agreement. A copy of Camelot SI's December 10, 2021 response to the Termination Letter is attached hereto as **Exhibit H**.

85.     Camelot SI was forced to file this suit in order to protect its rights.

**COUNT I - (DISMISSED BY COURT ORDER DATED 9/30/2022)**
**<u>FEDERAL UNFAIR COMPETITION</u>**
**(Against ThreeSixty Brands Group LLC and MerchSource, LLC)**

86.     Camelot SI incorporates Paragraphs 1 through 85 of the Complaint into Count I as if fully set forth herein.

87.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits the unauthorized use of any word, term, name, symbol, or false designation of origin in a way that is likely to cause confusion or mistake, or to deceive as to affiliation, connection, or association, or as to the origin, sponsorship, or approval of goods, services, or commercial activities.

88.     ThreeSixty's actions as set forth above are likely to cause confusion, mistake, or deception of consumers as prohibited by the Lanham Act. ThreeSixty's conduct therefore constitutes federal unfair competition, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

89.     Upon information and belief, ThreeSixty's conduct as alleged herein is willful and is intended to cause confusion, mistake, or deception of consumers, to the benefit of ThreeSixty and to the detriment of both Camelot SI and the purchasing public.

90.     ThreeSixty's conduct has caused injury to Camelot SI and its goodwill and reputation, and ThreeSixty's conduct will continue to both damage Camelot SI and confuse the public unless enjoined by this Court. For this injury, Camelot SI has no adequate remedy at law.

4880-4445-9065.4

91.     As a direct and proximate result of ThreeSixty's willful violation of the Lanham Act, Camelot SI has suffered damages in an amount to be proven at trial.

92.     This is an exceptional case and Camelot SI is entitled to recover reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**COUNT II - (DISMISSED BY COURT ORDER DATED 9/30/2022)**
**COMMON LAW UNFAIR COMPETITION**
**(Against ThreeSixty Brands Group LLC and MerchSource, LLC)**

93.     Camelot SI incorporates Paragraphs 1 through 85 of the Complaint into Count II as if fully set forth herein.

94.     ThreeSixty's activities, as set forth above, have and are likely to cause confusion with and be mistaken for Camelot SI's activities in the mind of the public.

95.     By establishing unauthorized SHARPER IMAGE branded storefronts along with a rival website and competing social media accounts under a confusingly similar mark, ThreeSixty has misappropriated Camelot SI's labors, skills, expenditures, investment, and goodwill.

96.     Upon information and belief, ThreeSixty's conduct as alleged herein is willful and is intended to cause confusion, mistake, or deception as to the affiliation, connection, or association of and between ThreeSixty and Camelot SI, and as to the nature, characteristics, and qualities of the parties' respective good and services.

97.     As described herein, ThreeSixty's actions were taken in bad faith to confuse and poach customers from Camelot SI.

98.     ThreeSixty's conduct has caused injury to Camelot SI and its goodwill and reputation, and ThreeSixty's conduct will continue to both damage Camelot SI and confuse the public unless enjoined by this Court. For this injury, Camelot SI has no adequate remedy at law.

99.     ThreeSixty's conduct constitutes unfair competition arising under the common law of the State of New York.

100.    As a direct and proximate result of Defendants' willful violation of Camelot SI's common law rights, Camelot SI has suffered damages in an amount to be proven at trial.

**COUNT III**

**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**(Against ThreeSixty Brands Group LLC and MerchSource, LLC)**

101.    Camelot SI incorporates Paragraphs 1 through 85 of the Complaint into Count III as if fully set forth herein.

102.    Camelot SI has long enjoyed successful relationships with its customers nationwide, and enters into hundreds of relationships with new customers every day due in no small part to the goodwill that Camelot SI has accumulated through the years. Camelot SI has similarly enjoyed a successful business relationship with Amazon.

103.    Defendants' conduct has directly interfered with Camelot SI's existing and prospective relationships with Amazon and consumers and constitutes tortious interference with Camelot SI's prospective economic advantage and business relationships.

104.    At all relevant times, Defendants knew of Camelot SI's goodwill with Amazon and consumers and the existing and prospective relationships Camelot SI has with Amazon and consumers.

105.    Defendants employed wrongful means to interfere with Camelot SI's existing and potential relationships with Amazon and consumers and, upon information and belief, did so for the sole purpose of inflicting intentional harm on Camelot SI.

106.    Beyond interfering with Camelot SI's relationship with Amazon, Defendants have also interfered with Camelot SI's customer relationships. For example, MerchSource improperly

26

directed customers that purchased MerchSource products to contact Camelot SI regarding product issues. Moreover, MerchSource interfered with prospective customers who would purchase products from Camelot SI by targeting them through various ad campaigns and refusing to list certain items on SharperImage.com while running those ad campaigns to divert customer purchases to their own e-commerce retailers.

107.    Similarly, Defendants' interfered with prospective Camelot SI customers shopping on Amazon because Defendants' own controlled "Sharper Image Store" is hyperlinked from Camelot SI's product pages.

108.    Defendants' conduct has caused injury to Camelot SI and its prospective economic advantage and business relationships, and Defendants' conduct will continue to damage Camelot SI unless enjoined by this Court. For this injury, Camelot SI has no adequate remedy at law.

109.    As a direct and proximate result of Defendants' tortious interference with Camelot SI's prospective economic advantage and business relationships, Camelot SI has suffered damages in an amount to be proven at trial.

### COUNT IV
### <u>TORTIOUS INTERFERENCE WITH CONTRACT</u>
### <u>(Against MerchSource, LLC)</u>

110.    Camelot SI incorporates Paragraphs 1 through 85 of the Complaint into Count IV as if fully set forth herein.

111.    At all relevant times, Camelot SI and ThreeSixty were parties to an enforceable contract—the Purchase Agreement.

112.    The Purchase Agreement granted Camelot SI an exclusive license to use the Trademarks in e-commerce. (Exhibit B, Purchase Agt., ¶ 3(a)(i). The Purchase Agreement only

allows for other licensees of the Trademarks to sell SHARPER IMAGE branded products through non-SHARPER IMAGED branded online retail sales or marketing platforms. *Id.*

113.    At all relevant times, MerchSource knew of Camelot SI's contractual relationship with ThreeSixty. Indeed, the MerchSource representatives involved with the acquisition of the Trademarks by ThreeSixty received detailed information regarding Camelot SI's license (including a copy of the Purchase Agreement) in connection with the acquisition.

114.    MerchSource intentionally and improperly interfered with Camelot SI's contractual relationship with ThreeSixty by establishing SHARPER IMAGE branded online retail sales and marketing platforms, as alleged herein. MerchSource and ThreeSixty's establishment of SHARPER IMAGE branded online retail sales and marketing platforms resulted in ThreeSixty's breach of the Purchase Agreement, without justification.

115.    MerchSource's conduct has caused injury to Camelot SI and its contractual relationship with ThreeSixty, and MerchSource's conduct will continue to damage Camelot SI unless enjoined by this Court. For this injury, Camelot SI has no adequate remedy at law.

116.    As a direct and proximate result of MerchSource's tortious interference with Camelot SI's contractual relationship with ThreeSixty, Camelot SI has suffered damages in an amount to be proven at trial.

### COUNT V
### BREACH OF CONTRACT
**(Against ThreeSixty Brands Group LLC f/k/a 360 Holdings II-A LLC)**

117.    Camelot SI incorporates Paragraphs 1 through 85 of the Complaint into Count V as if fully set forth herein.

118.    At all relevant times, Camelot SI and ThreeSixty Brands Group LLC f/k/a 360 Holdings II-A LLC were parties to an enforceable contract—the Website and Catalog Rights Purchase Agreement dated June 30, 2014.

119.    The parties' contract required ThreeSixty Brands Group LLC to refrain from offering SHARPER IMAGE branded products through SHARPER IMAGE branded e-commerce services.

120.    ThreeSixty Brands Group LLC breached ¶¶ 1(b)(xii) and 3(a)(i) of the parties' contract by establishing SHARPER IMAGE branded online retail sales and marketing platforms, as alleged herein.

121.    The parties' contract required ThreeSixty Brands Group LLC to refrain from activity that would negatively reflect upon or dilute the SHARPER IMAGE brand or the Trademarks.

122.    ThreeSixty Brands Group LLC breached ¶ 4(c) of the parties' contract by engaging in activity that negatively reflected upon and diluted the SHARPER IMAGE brand and the Trademarks, as outlined above.

123.    The parties' contract required ThreeSixty Brands Group LLC to refrain from activity that would compromise or reflect unfavorably upon the good name, goodwill, reputation or image of the other Party.

124.    ThreeSixty Brands Group LLC further breached ¶ 4(c) of the parties' contract by engaging in activity that compromised and reflects unfavorably upon the good name, goodwill, reputation and image of Camelot SI. Such activity includes, but is not limited to, ThreeSixty Brands Group LLC's untruthful reporting of Camelot SI's listings on Amazon as featuring counterfeit goods.

125.     The parties' contract required ThreeSixty Brands Group LLC to perform all acts that Camelot SI reasonably requested to effectuate the terms and provisions of the agreement.

126.     ThreeSixty Brands Group LLC breached ¶ 6 of the parties' contract by refusing to cancel the SharperTomorrow.com website and refusing to cease operation of its Amazon storefront in violation of the agreement, as alleged herein.

127.     Camelot SI substantially performed its obligations under the parties' contract.

128.     ThreeSixty Brands Group LLC's breach of the parties' contract has damaged Camelot SI in an amount to be proven at trial.

**COUNT VI**

**<u>UNJUST ENRICHMENT</u>**
**(Against ThreeSixty Brands Group LLC f/k/a 360 Holdings II-A LLC)**

129.     Camelot SI incorporates Paragraphs 1 through 85 of the Complaint into Count VI as if fully set forth herein.

130.     After purchasing the rights to an exclusive license for use of the Trademarks in e-commerce, Camelot SI invested significant capital, resources, and goodwill in growing its business and rejuvenating the Sharper Image brand for more than a decade.

131.     ThreeSixty Brands Group LLC understood the value of what Camelot SI built and took advantage of Camelot SI's investment by operating unauthorized storefronts, social media accounts, and a rival website intended to confuse and poach customers from Camelot SI.

132.     ThreeSixty's actions also have and are likely to dilute and devalue the Trademarks that Camelot SI legitimately licensed.

133.     As described herein, ThreeSixty Brands Group LLC was enriched at Camelot SI's expense, and it is against equity and good conscience to permit ThreeSixty Brands Group LLC to retain the benefit of Camelot SI's investment without compensating Camelot SI.

30

134.    If Camelot SI is not awarded complete relief under Count V—its cause of action for breach of the Website and Catalog Rights Purchase Agreement, it should be awarded damages based on ThreeSixty Brands Group LLC's unjust enrichment.

135.    Camelot SI pleads Paragraphs 117 through 123 of the Complaint in the alternative pursuant to Rule 8(a)(3).

**COUNT VII**

**<u>BREACH OF CONTRACT</u>**
**(Against ThreeSixty Brands Group LLC f/k/a 360 Holdings II-A LLC)**

136.    Camelot SI incorporates Paragraphs 1 through 85 of the Complaint into Count VII as if fully set forth herein.

137.    At all relevant times, Camelot SI and ThreeSixty Brands Group LLC f/k/a 360 Holdings II-A LLC were parties to an enforceable contract—the Manufacturing License Agreement dated August 14, 2013.

138.    The parties' contract granted Camelot SI a non-exclusive license to, among other things, manufacture and source manufacturing of SHARPER IMAGE branded products.

139.    On September 15, 2021, ThreeSixty Brands Group LLC sent a notice of default, claiming various breaches of the Manufacturing License Agreement by Camelot SI.

140.    Within 20 days of that notice, Camelot SI cured every one of the breaches that ThreeSixty Brands Group LLC alleged. On October 5, 2021, Camelot SI notified ThreeSixty Brands Group LLC of the actions Camelot SI was taking to cure the alleged breaches.

141.    On November 29, 2021, ThreeSixty Brands Group LLC breached ¶ 16.1(b) of the Manufacturing License Agreement by improperly attempting to terminate the parties' contract.

142.    Camelot SI substantially performed its obligations under the parties' contract.

4880-4445-9065.4

143.     ThreeSixty Brands Group LLC's breach of the parties' contract has damaged Camelot SI in an amount to be proven at trial.

**COUNT VIII - DISMISSED BY COURT ORDER DATED 9/30/2022**
**SPECIFIC PERFORMANCE**
**(Against ThreeSixty Brands Group LLC f/k/a 360 Holdings II-A LLC)**

144.     Camelot SI incorporates Paragraphs 1 through 85 of the Complaint into Count VIII as if fully set forth herein.

145.     At all relevant times, Camelot SI and ThreeSixty Brands Group LLC f/k/a 360 Holdings II-A LLC were parties to an enforceable contract—the Manufacturing License Agreement dated August 14, 2013.

146.     Camelot SI has substantially performed its obligations under the Manufacturing License Agreement, and is willing and able to perform any remaining obligations.

147.     Camelot SI has expended significant effort to establish relationships with manufacturers from whom Camelot SI sources SHARPER IMAGE products, and Camelot SI has invested significant capital, resources, and goodwill in building the Sharper Image brand with the intent to sell those products.

148.     Camelot SI's primary business purpose is to source, promote, and sell SHARPER IMAGE branded products.

149.     ThreeSixty Brands Group LLC is able to perform its contractual obligations under the Manufacturing License Agreement.

150.     The combination of Camelot SI's smart business management, the holiday season, and the COVID-19 Pandemic has seen SHARPER IMAGE sales grow.

151.    It would be entirely speculative to calculate the amount of damages Camelot SI would have made had ThreeSixty not engaged in this conduct. Camelot SI has no adequate remedy at law.

**COUNT IX**

**UNJUST ENRICHMENT**

**(Against ThreeSixty Brands Group LLC f/k/a 360 Holdings II-A LLC)**

152.    Camelot SI incorporates Paragraphs 1 through 85 of the Complaint into Count IX as if fully set forth herein.

153.    After purchasing the rights to a non-exclusive license to manufacture and source manufacturing of SHARPER IMAGE branded products, Camelot SI expended significant effort to establish relationships with manufacturers from whom Camelot SI sources SHARPER IMAGE products, and Camelot SI invested significant capital, resources, and goodwill in building the Sharper Image brand with the intent to sell those products.

154.    ThreeSixty Brands Group LLC understood the value of what Camelot SI built and, as part of its scheme to take advantage of Camelot SI's efforts and investment, ThreeSixty Brands Group LLC sent a letter purporting to terminate the Manufacturing License Agreement.

155.    ThreeSixty Brands Group LLC was enriched at Camelot SI's expense, and it is against equity and good conscience to permit ThreeSixty Brands Group LLC to retain the benefit of Camelot SI's investment without compensating Camelot SI.

156.    If Camelot SI is not awarded complete relief under its cause of action for Count VII—its cause of action for breach of the Manufacturing License Agreement, it should be awarded damages based on ThreeSixty Brands Group LLC's unjust enrichment.

157.    Camelot SI pleads Paragraphs 140 through 145 of the Complaint in the alternative pursuant to Rule 8(a)(3).

**PRAYER FOR RELIEF**

WHEREFORE, Camelot SI requests judgment against ThreeSixty, awarding the following relief:

A.   Declaratory judgment that Camelot SI owns the exclusive right to sell SHARPER IMAGE branded products through SHARPER IMAGE branded online retail sales or marketing platforms;

B.   Declaratory judgment that ThreeSixty Brands Group LLC's purported termination of the Manufacturing License Agreement is invalid;

C.   An order granting specific performance, requiring ThreeSixty Brands Group LLC to perform its contractual obligations under the Manufacturing License Agreement;

D.   An order enjoining Defendants from the unlawful and unfair acts and conduct set forth above;

E.   An order requiring an accounting of the gains and profits realized by Defendants from its wrongful acts of unfair competition;

F.   An order requiring Defendants to pay to Camelot SI:
  i.   actual damages;
  ii.  all profits wrongfully derived by Defendants from their unlawful and unfair acts and tortious interference;
  iii. increased and punitive damages as allowed by law;
  iv.  costs and expenses, including without limitation reasonable attorneys' fees; and
  v.   prejudgment interest at the maximum legal rate;

G.   Any additional relief that this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff Camelot SI, LLC hereby demands and requests a trial by jury on all issues so triable.

Dated: October 21, 2022                    Respectfully submitted,

                                           _/s/ Peter N. Wang_____
                                           Peter N. Wang
                                           FOLEY & LARDNER LLP
                                           90 Park Avenue

34

New York, NY 10016-1314
(212) 682-7474
pwang@foley.com

Lauren M. Loew (pro hac vice)
Jami A. Gekas (pro hac vice)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654-5313
(312) 832-4500
lloew@foley.com
jgekas@foley.com

*Attorneys for Plaintiff Camelot SI, LLC*

4880-4445-9065.4